move now to uh... case number seven this is united states versus aubrey jones this is appeal twenty two dash thirty two eighteen and mister bill we're gonna begin with uh... oral argument from you they please the court this case centers on two questions what objective evidence must the police have of the commission of crime before they see is a person and second what is the evidence in this case uh... uh... of the of the commission of a crime the parties do not disagree as to what the legal standard it's the standard terry standard police officers may detain a suspect for a brief investigatory stop if they have a reasonable suspicion based on articulable facts that a crime is about to be or has been committed and the inquiry is an objective one based on the totality of the circumstances known to the officer at the time of the stop but the parties do not agree as to what the facts are mister jones was walking along cermak road and turned onto kirkland avenue the police officers while back in their police station observed mister jones on a pod cam while he was on cermak he was gripping his pants which did not have a belt judge coleman found during the evidentiary hearing that the officers could see that mister jones was gripping something but could not tell what it was evidentiary hearing has the following uh... colloquy the prosecutor asked what did it appear to you watching this footage that he was gripping objection this is page thirteen of the transcript of the evidentiary hearing and the court in response to the objection the court says let mister biel make his objection clear i say that the objection is he doesn't know what mister jones was gripping the court says no and he hasn't said what he's gripping he can't say but he can talk about he's gripping something at this point it's very clear after his walking for twenty seconds and never letting go of his crotch area he's gripping something but then later the same day without receiving any additional evidence judge coleman issues a minute order denying uh... the motion to suppress and stating in the minute order officers observed jones on pod gripping a large object concealed inside the crotch area of his pants which based on its shape appeared to be a gun and the government echoed that and echoes that in its brief saying a review of the entire video captured by the pod camera at twenty two hundred south colin shows the defendant was continuously gripping a long rectangular shaped object within the right side of his pants we submit that the video does not show that that the video the video it looks to me from uh... the video mister wheel just uh... in the interest of time here it looks to me like especially when they when the video when the camera zooms in that he's gripping something about midway down his leg right because you can you can kind of see his fingers bend and he's holding something now obviously we don't know what that something is yes but that's what the judge found that he was gripping something but we didn't know what it was. I've watched the video my colleagues have probably watched the video so my question is if that's the impression i have from watching the video i don't know what he's gripping but he's clearly gripping something about midway down his leg and how is that finding by the district judge clear error the factual finding because the judge found it appeared to be a gun we submit looking at the same thing you've looked at that there's no reason there's nothing the government has after he was tackled there's a picture of the gun sliding down on the back of his leg that can be seen to certainly have indicia of being a gun the object whatever it was he was grabbing there's no indicia of being a gun and carrying something of unknown nature is not a crime you know that that's that's the problem we have which is he was walking carrying something he may have had something i mean he could have we know now that that there was a gun although the gun i mean i can get technical the gun was in his underpants not his uh... he was actually trying to just make sure the gun didn't fall out of his pants like it did after he got tackled it was sitting in it because at the beginning of the video and then in that brief three seconds in the middle and in the end he's walking around without holding anything let me ask you one other thing that stuck out to me and maybe it's irrelevant you can tell me that is as as mister jones is walking down the sidewalk and that camera is picking him up on several different occasions he appears to be uh... quite concerned about what's happening around him he's looking over his shoulder he he appears on the camera a bit jittery as if he's you know someone's about to approach him or somebody's looking at him or he's about to be confronted is that one do you think that's an accurate observation in the video and two do you think it's legally relevant i think it's it's not i would not say that's that's a completely unfair observation mister jones had been as he told the officer he had been shot once in this neighborhood he just seemed jittery he seemed nervous that that's my perception and to add on to judge scudder's point at one juncture towards the end of the segment of the video that we saw he kind of goes around the corner of a brick building he's not there long almost like a readjustment and then keeps walking thoughts on that well again he's he's readjusting something and we don't know what it is uh... and is there any reason to without having any notion as to what it is that that there's a sufficient indicia it's a gun so that the government has an objective fact rather than mere speculation that's what the balance is and uh... you know we submit that simply walking down the street with an unknown object grasping it uh... is not doesn't constitute a criminal offense and even on a reasonable suspicion level uh... i mean if if there were because they talk about the shape appearing to be a gun and the government says long rectangular shaped object that was before the takedown those characteristics were not visible we submit i mean i've looked at this video multiple times so after he was taken down it was obvious they've got just some object which the certainly the police have an intuitive instinct to say oh he probably has a gun but that's not what the legal standard is why isn't it sufficient on this record though and again as judge scudder noted the standard of review is clearly erroneous for factual determinations you clearly see some type of bulge that he's holding something in his pants he's in a high crime area he's looking around like he's suspicious and you have officers who are trained and experienced in this why isn't that collection of facts sufficient here again on a clearly erroneous standard of review well first of all in terms as i mentioned with the facts judge coleman did with respect to what's on the video judge coleman didn't have doesn't have anything that gives her particular insight above what this court would have just seeing what's actually on the video but secondly in terms of it's pretty much a normal inner city neighborhood uh... which is a dangerous place and it's not altogether surprising that mister jones who's been shot once in that neighborhood nervous walking around and in terms of the police you know they talk about it being a high crime neighborhood and so on but there are no specific instances and or no statistics of the nature of that neighborhood often by the government during the hearing they just make very general statements that wasn't contested at the hearing that it's a high crime neighborhood and the officers who police that neighborhood said it's a high crime neighborhood that sounds like that would be sufficient well it it's i think the problem is that makes it no different than virtually any neighborhood on the south and west side of the city of chicago and that doesn't give the uh... the police carte blanche to stop anybody they want to just because they're in one of many high crime neighborhoods Mr. Beal can I get the benefit of your reaction to one other question it's it's this so let's let's forget the video altogether for a minute just categorically set it outside your mind when when the police pull up we can't get this all on the camera but it's uh... from the video but it and then he runs so regardless of the conclusion this debate about what findings were uh... you know uh... okay or not okay on the video why under illinois versus wardlow is that flight alone in that area not enough to justify the terry stop well i think that wardlow says justice stevens concurrent says that flight alone should not be enough no focus on the majority opinion wardlow i guess what i would say is this was he fled ten or fifteen yards it was inherently futile flight uh... it was in the context so too on the facts of wardlow well what what what we submit it it's mister jones way of telling the police he didn't want to talk to them and uh... he he he he uh... fled from them uh... wardlow doesn't justice stevens interpretation of the majority opinion is that flight alone is not necessarily uh... sufficient so that's what i would rely on is justice stevens interpretation of the majority opinion you know i mean what i would say is that mister jones was a young man in a inner city neighborhood and many young men in those neighborhoods have uncomfortable relations with the police and don't like to talk to them and he was manifesting uncomfortable relationship and if that should not be then expanded constitute sufficient basis for uh... terry stop thank you mister bill we will give you some rebuttal time and now we're gonna move onto argument from the government stone uh... thank you your honor may please the court brandon stone on behalf of the united states the district court properly denied the defendant's motion to suppress after holding an evidentiary hearing during which a review pod body cam videos and her testimony from the arresting officer during that hearing officer martinez clearly articulated the particular facts that led him and his partner officer smiley to conduct a terry stop those facts include officer martinez uh... discussion of the high crime neighborhood in which narcotics activity and gang shootings recently taken place uh... it also discussed the officer's observations of the defendant's appearance on pod camera video where they watched him glancing around nervously gripping a concealed object in his pants which they stated that they believe to be a firearm and then third that when the officers arrived on scene to conduct a field interview which is what they stated they plan to do upon reaching the defendant they and uh... as often martinez testified it was these facts all in their entirety that's how the circumstances that led the officers to stop the defendant and recover the firearm from the right leg of his pants on the first address defendants argument regarding the exchange with judge coleman uh... regarding it's really a response to an objection by judge coleman uh... that the a-u-s-a is asking a question about what the officer spotted on the pod camera video and if i can turn to page thirteen of the transcript uh... yes judge coleman says he hasn't said what he's gripping she also says right now he can't say he can't talk about that he's gripping something she says it's very clear that he's after walking for twenty seconds and never letting go of his crotch area he's gripping something now that was in response to an objection from counsel from defense counsel regarding what the officer knew at the time i want to point out first of all it's not about what the officer knew it's about what the officer reasonably suspected at the time as the officer stated just two pages later in the transcript after talking about recovering dozens of firearms from individuals in these sorts of circumstances he said in response to based on your training and experience and based on the crimes that have taken place in this area did you have any suspicion at this time about what jones was doing what did you believe he was doing i believe he was concealing a firearm inside of his pants and so defendant's argument that judge coleman somehow made an inconsistent factual finding during the hearing in response to an objection just doesn't comport with what's in the transcript i want to go back to also judge scudder's question about nervousness and it's relevance to the totality of the circumstances here as the government pointed out in it's brief at page twenty colbert case uh... says that nervous behavior is suggestive of wrongdoing it's suggestive of criminal behavior and as judge coleman mentioned in the suppression hearing she said you're looking every which way but loose she made the finding that he did indeed start looking around nervously and you can see on the pod video that the defendant is doing so uh... third i want to address this this question of high-crime neighborhood as judge staneef pointed out this is uncontested at the hearing officer martinez testified that he had patrolled this neighborhood he was familiar with this neighborhood that he knew of recent narcotics activity and he knew of recent gang shootings in the area defense counsel had a chance to cross examine him on those statements that was declined and so now defense uh... in his reply brief defendant in his reply brief wants to say that we need to provide statistics or reports that's just not the case uh... those facts were introduced at the hearing he had a chance to cross examine him and he declined that and finally i just want to address defendant's flight uh... judge scudder you asked a question about defendant's flight uh... under ward law in a high-crime neighborhood flight is relevant to consciousness of guilt uh... it's what i think it calls a classic behavior uh... showing evidence of wrongdoing and so it of course is relevant to the totality of the circumstances here Mr. Stone this may be a little bit off point but are you aware have there been constitutionality challenges made to these pod cameras this is different than a poll camera where there's a a warrant some type of probable cause termination that might be pointing towards an alleged drug house this is just on the street your honor i'm not aware of any constitutional challenges to the pod cameras i assume you're asking about you know what they can and can't see and the degree of zooming in and it's just the general civil liberties concept and we've got obviously cameras at intersections but i'll be asking the same question to Mr. Beal i just want to get the benefit if you have any knowledge on that i do not your honor but one thing i do want to point out is in our brief we did talk about what is a pod camera and how they're operated one thing that i i would point out is they're clearly marked so they're up on the polls uh... this is from this is in our brief at page in footnote two uh... they they're they're marked by with cpd logo uh... and they're they're in plain sight so uh... most of the residents in this area know that these podcams exist and that they're being operated so lastly i just want to point out that this was good police work here by the arresting cpd officers they were watching a high crime street corner on pod they observed the defendant behaving suspiciously and gripping a concealed object concealed in his pants these facts provided them with the ability that they they want to go investigate they stated during the suppression here they want to conduct a field interview when they drove over to the defendant he fled immediately dropped the water bottle he was carrying in his left hand continued to clutch uh... the concealed object in his right hand that gave the officers reasonable suspicion to conduct a Terry stop during which uh... after a brief foot chase they tackled the defendant and recovered a loaded Glock 23 loaded with an extended magazine concealed in his pants this stop was permissible under the fourth amendment and the government therefore respectfully asks that the court affirm the judgment of the district court thank you very much Mr. Stone uh... Mr. Beal we're going to go back to you with two minutes for uh... rebuttal and Mr. Beal if you might begin with my inquiry concerning civil liberties challenges to these types of cameras or any thoughts you have on that unfortunately I looked into that at the beginning of the appeal and the seventh circuit has upheld I think Judge Flom wrote the opinion and that's different than say a poll camera with a probable cause determination hasn't been made I don't remember the details but I remember that when I looked into it I discovered it was going nowhere because of that opinion thank you you may continue your honor this case presents the question of of where the line is between officer speculation and uh... objective evidence of criminal conduct on the part of the defendant I would submit that Mr. Jones was engaged in odd but not obviously criminal conduct in that there as I've looked at that repeatedly at the video you cannot see the outline of a gun even a conspicuous bulge doesn't exist on the video uh... I realize there are these other aspects but it raises the question of what the rights of an individual in the inner city is uh... as uh... uh... and that I would submit that this case does not have sufficient indicia of criminal conduct to go over the line of just odd behavior to reasonable suspicion of the commission of an actual crime thank you very much Mr. Beal thank you very much Mr. Stone the case will be taken under revision we are now going to